FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

98 APR -7 AM 2: 34

U.S. DISTRICT COURT
N.D. OF ALABAMA

LINDA GAIL BURCHAM,             )
                                )
        Plaintiff,              )
                                )
vs.                             )   CV 97-PT-1378-E
                                )
ANNISTON PUMP SHOP,             )                    ENTERED
                                )
        Defendant.              )                    APR 7 1998

---

Memorandum Opinion

---

This cause comes on to be heard on a motion for summary judgment filed on January 20, 1998 by the defendant, Anniston Pump Shop ("Pump Shop"). In it, the defendant argues that the plaintiff, Linda Gail Burcham ("Burcham"), cannot present genuine issues of fact supporting her claims of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it

55

believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exist genuine issues for trial. Celotex, 477 U.S. at 324; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any..." in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the looking glass of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993). However, incomplete or anecdotal evidence will not aid the non-movant in demonstrating a genuine issue of material fact. "The nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Tidwell v. Carter Products, --- F.3d ---, 1998 WL 80143 at *3 (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir.1989)).

In light of the above, this court must canvass the evidence to resolve the existence of a genuine issue of material fact.

Facts

The plaintiff, a fifty-three year old female, was hired by the defendant in January 1996 as an assembler employee and was terminated in June 1996. The ostensible reason for her termination was excessive absences (19) in the five months of her employment: She was tardy for work once in February 1996, absent five consecutive days in March 1996 allegedly because of intestinal flu, absent eight days in April of 1996 (three days for illness and five days because she needed to be present an

a relative's surgery), absent four days in May 1996 allegedly due to kidney stones and absent two days in June 1996 purportedly because of an infection. According to the plaintiff's attorney, the plaintiff was given no warning about possible repercussions for her absences prior to her termination. The plaintiff also states that she followed company policy concerning absences from work. The parties present evidence concerning thirty three of the defendant's employees, as related to the length of their employment, the number of absences of the employees, whether or not those employees were terminated and the employees' age and sex.

Contentions & Analysis

In a discrimination suit, a plaintiff can make her case either through giving direct evidence, "such as age-biased [or gender-biased] statements made by the decision maker," by use of circumstantial evidence or "by presenting a statistical pattern of discrimination." Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1457 (11th Cir. 1997). See also Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997). There exists no direct evidence or statistical evidence corroborating the plaintiff's sex and age discriminations claims. Consequently, the plaintiff's claim must be made on the basis of circumstantial evidence.

The Supreme Court has set up a burden shifting scheme as a means by which a plaintiff can establish a claim of discrimination when her claim rests entirely on circumstantial evidence. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981), and St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). The two initial burdens are meager. The plaintiff carries the initial burden of making out a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. at 802. Establishment of the prima facie case is accomplished through proving certain minimal facts: (1) that the employee belongs to a protected class, (2) that an employment-related action was taken and (3) that employees outside of the class or younger than the plaintiff with identical or poorer qualifications or employment records were treated more favorably. Holifield v. Reno, 115 F.3d at 1562. In the case in which a plaintiff is terminated, discriminatory termination can be established in an age discrimination case by demonstration that the plaintiff is a qualified individual over forty who was replaced with someone younger than she or that younger people who were similarly situated to her were not terminated. See Zaben v. Air Products & Chemicals, Inc., 129 F.3d at 1457; Corbin v.

Southland Int'l Trucks, 25 F.3d 1545, 1549 (11th Cir. 1994); Earley v. Champion Int'l Corp., 907 F.2d 1077, 1082 (11th Cir. 1991); Cengr v. Fusibond Piping System, 135 F.3d 445, 451 (7th Cir. 1998). In a gender discrimination case, the plaintiff must demonstrate that she was qualified for the position and that upon termination, she was replaced by a member of the opposite sex or that members of the opposite sex similarly situated to her were not terminated. "The establishment of the [prima facie case] is significant for two reasons: first, it creates a presumption of unlawful discrimination that the employer must rebut or lose as a matter of law; and, second, it means that the plaintiff has present evidence allowing a reasonable trier of fact to infer unlawful discrimination." Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642-43 (11th Cir. 1998).

Upon proof of the prima facie case, the defendant has the negligible burden of articulating some legitimate, nondiscriminatory reason(s) for its employment-related decision. "To satisfy this burden, the employer 'need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.'" Tidwell v. Carter Products, --- F.3d ---, 1998 WL 80143 at * 3 (11th Cir. 1998)(citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. at 257). "Successfully carrying this burden bursts the presumption of discrimination and leaves only the ultimate question—whether the employer's offered explanations are pretextual." Carter v. Three Springs Residential Treatment, 132 F.3d at 643.

Once the defendant has articulated some legitimate nondiscriminatory reason(s) for the employment decision, eliminating the presumption of discrimination, "the plaintiff has the opportunity to discredit the defendant's proffered explanation for its decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).

The types of evidence that are presented to demonstrate that the defendant's reason for the unfavorable action was due to improper discrimination comes in two forms: First, there is the form of evidence that does not attack the defendant's reason itself, but establishes pretext by demonstrating other discriminatory actions of the defendant. Occasionally, the facts that prove the plaintiff's prima facie case will satisfy this burden, as in the case where the plaintiff demonstrates that the female employees of a business were consistently treated less favorably than the male employees. More often, the plaintiff will be required to present more evidence than that supporting her prima facie case in demonstrating that "a discriminatory reason more likely motivated the

4

employer." Texas Dep't of Community Affairs v. Burdine, 450 U.S. at 256; See Combs v. Plantation Patterns, 106 F.3d at 1528.

The plaintiff can also present a second form of evidence establishing discriminatory animus "indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Community Affairs v. Burdine, 450 U.S. at 256. The plaintiff, rather than putting on evidence of other motives by the employer, introduces evidence the purpose of which is to permit a reasonable trier of fact to find hollow the nondiscriminatory reason(s) offered by the employer. Combs v. Plantation Patterns, 106 F.3d at 1528.

> [I]n considering whether a plaintiff has presented a jury question on pretext, we have required that the plaintiff point to facts which, if true, would present a basis for the disbelief of the defendant's overall justification. That the plaintiff calls into question some assertions made by the defendant in support of defendant's justification is not enough. The plaintiff must call into question the veracity of the defendant's ultimate justification itself. See Brown v. American Honda Motor Co., 939 F.2d 946, 952-54 (11th Cir.1991) (although plaintiff succeeded in contradicting some facts alleged by defendant, plaintiff presented no jury question because defendant's ultimate justification went essentially unchallenged).

Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996).

> When deciding a motion by the defendant for judgment as a matter of law in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions, the district court's task is a highly focused one. The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct," Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994) (citation omitted). The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Sheridan, 100 F.3d at 1072 (citation and internal quotation marks omitted); see also Walker, 53 F.3d at 1564 (Johnson, J., concurring) (discussing methods of proving pretext). However, once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action. At that point, judgment as a matter of law is unavailable.

Combs v. Plantation Patterns, 106 F.3d at 1538. See Evans v. McClain of Georgia, Inc., 131 F.3d 957, 964-65 (11th Cir. 1997).

The plaintiff contends that she can state a *prima facie* case of gender discrimination because (1) she is a woman; (2) she was qualified for her position; (3) she was terminated; and (4) she was replaced with a male. This final fact is without clear support. After her termination, the plaintiff's

position was taken by Tammy Wood, a twenty-three year old female. The plaintiff contends that, even though she was replaced with another woman, Ms. Wood was moved from another position creating a vacancy in the check stand. That vacancy was filled by another woman, Nell Gillum, whom the plaintiff was originally hired to replace. Ms. Gillum's remained in the position until she retired and someone else could be hired to fill the check stand position. Eventually, Leslie Edwards, a male, was hired to fill Tammy Woods' position. At some point, Leslie Edwards began to work as a computer assembler, the same type of position that the plaintiff held.

The court is uncertain that this indirect form of replacement operates to satisfy the plaintiff's prima facie case, at least insofar as her gender discrimination claim is concerned. The plaintiff was replaced with a woman. Perhaps, after a round of musical chairs, a vacancy was filled by a male employee. Employers often, however, rehire within their ranks and the promoted or shuffled employee must in turn have a replacement. The position that Burcham evacuated was filled with Tammy Woods, another woman, whose position was filled, temporarily, at least, by Nell Gillum. That Nell Gillum's position on the check stand (a different position than the one occupied by plaintiff) was occupied by a male after she retired raises no discriminatory inference.

The plaintiff also attempts to present a genuine issue of triable fact regarding her prima facie case of gender discrimination by comparing her situation to that of males who have worked for the defendant and who have not been terminated for the same degree of absenteeism. See Jones v. Gerwins, 874 F.2d 1534, 1539-40 (11th Cir. 1989). The plaintiff contends that the defendant's inconsistent application of its absenteeism policy presents a genuine issue of material fact. Carter v. Three Springs Residential Treatment, 132 F.3d at 644. In her reply brief, the plaintiff apparently concedes that the only employees that might be considered similarly situated to her are short-term employees who were "involved in acts of comparable seriousness." McDonnell Douglas Corp. v. Green, 411 U.S. at 804. See Holyfield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). The plaintiff points out some violations she believes to be comparably serious to those performed by the plaintiff committed by who she deems to be otherwise similar employees:

> Darrell Polk, a male, was absent twenty days, including vacation days, missed twelve partial days and was tardy eighteen times during the almost thirteen months he was employed by the defendant. Polk voluntarily resigned.
>
> After he was rehired, Jeremy Howard, a male, only worked for ten months. During that time he was absent eleven days, missed two partial days and had eighteen tardies. He voluntarily resigned.

6

After fifteen months employment, Chad Forsyth, a male, had fifteen absences and missed one partial day in a six month period. Mr. Forsyth is apparently still employed.

Doug Bussey worked for slightly under a year, during which time he had twenty absences, including vacation days, missed nine partial days, and had thirty-three tardies. Mr. Bussey resigned.

Mike Walker was employed for one year, during which time he was absent twenty-six days, including days on which he was suspended from work, missed three partial days, and had twenty-seven tardies. Mr. Walker was terminated for reasons not related to absenteeism.

The list contains five more male employees who received similar arguably favorable treatment. Alone, this would substantiate the plaintiff's prima facie case and might even rebut the defendant's alleged nondiscriminatory explanation for its actions. However, it is also the case, as the plaintiff and the defendant have pointed out, that other female employees enjoyed the same favorable treatment.

Debra Salers had twenty-three absences in her first five months of employment (although most were due to surgery after an automobile accident), one of which was unexcused and two of which were unrelated to her injury. She also missed two partial days and had three tardies. Ms. Salers remains employed.

Tara Bell was employed only nine months, during which time she had nineteen absences (including suspension and vacation days), missed eleven partial days, and was tardy once. Ms. Bell resigned.

Tammy Wood (plaintiff's replacement) was absent within one month of the date she was hired for chicken pox, remaining out of work for thirteen days. In addition, Wood missed three partial days and had two tardies within her first five months of employment. Apparently, Ms. Wood resigned after nineteen months.

After six months of work, Amanda McFall had nineteen absences, twelve of which were due to a fall from a horse. She was laid off.

These facts belie an inference from the fact that the plaintiff was treated unfairly in being terminated to her being terminated because of her gender. Acts which caused the plaintiff to lose her position with the defendant did not cause other females similarly situated to the plaintiff to lose employment.[1]

---

[1] The plaintiff also argues that she can state a prima facie case because she and one other female employee over fifty, Melda Turner, were fired after being absent for two consecutive days and, in Ms. Turner's case, failing to notify the Pump Shop, while two male employees were not fired, but only received one warning, for the same acts as Ms. Turner. Given the other evidence offered by plaintiff and defendant, the court does not believe that this evidence helps plaintiff to demonstrate an instance of gender discrimination. It may be relevant, however, to the plaintiff's age discrimination claim.

The above facts do not foreclose the plaintiff's assertion of a prima facie case of age discrimination, however. The plaintiff is a qualified employee over forty who was terminated and replaced with someone younger. In addition, none of the people who were retained after excessive absences were over the age of forty-five. The plaintiff has also identified an individual of fifty, Melda Turner, who was terminated after two consecutive days of absence. Ms. Turner received a warning for each day absent, unlike two younger individuals who received only one warning for both days absent. The defendant defends its termination as being a result of the excessive absences of the plaintiff.

Evidence offered in support of the prima facie case can create, in some cases, a genuine issue of fact that a reason proffered by the employer is false with respect to the plaintiff. See Maddow v. Proctor & Gamble Co., Inc., 107 F.3d at 851-52 (11th Cir. 1997). In the normal circumstance, however, the plaintiff will have to provide evidence that alleged grounds for the employment decision did not apply to the plaintiff—for example, the employee is terminated for poor performance although she is consistently reviewed as an excellent employee—or that the employer's reason may be applicable, but it is applied in an ad hoc manner against members of the plaintiff's class. On either theory of proof, the plaintiff has created a genuine issue of material fact that she was discriminated against on the basis of age. The only examples the court has of individuals over fifty being disciplined for absenteeism has that absenteeism policy being applied unfairly against them. By contrast, with respect to younger employees, the absenteeism policy is applied in a more favorable, if ad hoc manner.

The court notes that the plaintiff was hired when she was over fifty, perhaps aiding the inference that the employer believed her capable of performing in the position. However, the individual who hired the plaintiff is not the same individual who terminated her. In addition, a large percentage of the work force at the Pump Shop is older than the plaintiff, including the supervisor who decided to terminate her. Although these facts may lend credence to the defendant's position that plaintiff was not terminated because of her age, they are not sufficient to create the absence of a genuine issue of triable fact on the issue. See Billingsly v. Jefferson County, 953 F.2d 1351, 1353 (11th Cir. 1992) (stating that in a case of race discrimination, "[t]he presence of a black man in a supervisory or decision-making position . . . cannot shield the [defendant] from liability under Title VII") and Shanger v. Upjohn Co., 913 F.2d 398, 403 (7th Cir. 1990) (holding that "[t]he statute does not protect merely the older worker who is perfect from the standpoint of his employer" but also

"the imperfect older worker from being treated worse than the imperfect younger one").

## Conclusion

Summary judgment will be GRANTED on the plaintiff's gender discrimination claim. Summary judgment will be DENIED with respect to plaintiff's age discrimination claim. The court recognizes that the plaintiff's age claim may be substantial by the barest margin. However, some weak cases must proceed to trial. The court will carefully consider the evidence at trial.

This 6 day of April 1998.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE